Filed 09/17/20  Multani v. DeCuollo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMARPREET S. MULTANI et al.,<br><br>    Plaintiffs, Cross-defendants and Appellants,<br><br>            v.<br><br>ERNEST ANTHONY DeCUOLLO,<br><br>    Defendant, Cross-complainant and Respondent;<br><br>GLENN RICHARD BARRY,<br><br>    Defendant and Respondent. | G057642<br><br>(Super. Ct. No. 30-2017-00930514)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Glenn R. Salter, Judge.  Affirmed.  Request to take additional evidence.  Denied.

Biggins Law Group and Chad Biggins for Plaintiffs, Cross-defendants and Appellants.

Gladych Law, Inc. and John A. Gladych for Defendant, Cross-complainant and Respondent and for Defendant and Respondent.

\*          \*          \*

## INTRODUCTION

Two agreements are the subject of this appeal. The first is a promissory note made on August 5, 2013 in the amount of $68,000 (the Promissory Note). The payors are Amarpreet S. Multani and Seacliff Liquor & Market, Inc. (Seacliff), and the payee is Anthony DeCuollo. The second is called the Put/Call Option Agreement, also dated August 5, 2013, between Multani and DeCuollo.

Multani and Seacliff sued DeCuollo and Glenn Richard Barry for a declaration the Promissory Note and the Put/Call Option Agreement were void and unenforceable. DeCuollo cross-complained against Multani and Seacliff to enforce the Promissory Note. Following a bench trial, the trial court issued a comprehensive statement of decision finding the Promissory Note and the Put/Call Option Agreement were valid and enforceable, rejecting Multani and Seacliff's claims they were fraudulently procured (as well as other defenses to their enforcement), and awarding DeCuollo $68,000 in damages on his claim to enforce the Promissory Note.

Multani and Seacliff appealed from the judgment in favor of DeCuollo. Multani and Seacliff's appellate briefs are, however, more of an attempt to reargue the evidence and inject new theories than they are temperate presentations of arguments grounded in the principles of appellate review. Among those principles, the one that is dispositive of this case is the substantial evidence standard governing—and limiting— review of the trial court's factual findings. We conclude substantial evidence supports the trial court's express and implied findings, and Multani and Seacliff have not met their burden of showing legal error. We therefore affirm.

## FACTS

### I.

### The Promissory Note

DeCuollo is a licensed real estate salesperson who worked under Barry's broker license. DeCuollo was the owner of a corporation called Business Finders, Inc.

(Business Finders), and Barry was the broker for the corporation.  Rather than split commissions, DeCuollo had a written contract with Barry by which DeCuollo paid Barry $6,000 per year in exchange for which Barry acted as broker and assigned commissions to DeCuollo.

Multani owned King Liquor store.  He retained DeCuollo to sell King Liquor and purchase another liquor store called Valley Liquor as a tax deferred transaction (also called a section 1031 exchange).  Multani and DeCuollo entered into a written agreement by which Multani agreed to pay Business Finders a $40,000 commission for the sale of King Liquor and a $30,000 commission for the purchase of Valley Liquor.  The commission would be earned once DeCuollo found a "ready, willing, and able buyer" for King Liquor.

DeCuollo put King Liquor on the market and obtained an offer from a prospective purchaser named Doug Pham, whom DeCuollo considered to be a qualified buyer.  Escrow was opened but ultimately was canceled by Multani, who told DeCuollo he did so because "[m]y wife doesn't want to sell the store."

Multani nevertheless went ahead with the purchase of Valley Liquor, and that transaction closed in April or May of 2013.  DeCuollo helped put the deal together and obtained a new lease and the necessary licensing.  The escrow instructions referred to a $70,000 commission to be paid to Business Finders for both the King Liquor and the Valley Liquor transactions.

Multani claimed he did not have the money to pay the commission.  DeCuollo agreed to give Multani a $2,000 discount and accept a promissory for $68,000 from Multani and Seacliff as payment for the $70,000 in commissions owed.  DeCuollo testified:  "[T]he $68,000 note was in satisfaction of the two commissions that Multani . . . owed me.  And they agreed to pay me, one, $40,000 for the sale of King Liquor; and two, the $30,000 for the sale of Valley Liquor."  DeCuollo wanted the note to bear

6 percent interest, but Multani did not want to pay interest, so DeCuollo agreed to make the note interest free.

Multani signed the Promissory Note individually and as president of Seacliff, and a photocopy of the note was received into evidence as exhibit 12. Multani has paid nothing on the Promissory Note.

DeCuollo always spoke in English with Multani, who, though a native Punjabi speaker, always spoke in English with DeCuollo. DeCuollo had no difficulty understanding Multani, did not perceive that Multani had any difficulty understanding him, and never understood Multani to be functionally illiterate in reading English.

## II.

### The Put/Call Option Agreement

The Put/Call Option Agreement, made between Multani and DeCuollo, arose out of a two-step transaction by which Multani purchased a liquor store called the Seacliff Liquor & Market that was owned by Seacliff. In the first step, DeCuollo acted as the seller's agent in selling a parcel of real property to a buyer named Mr. Schuelein. The real property included, among several businesses, the Seacliff Liquor & Market. Schuelein formed Seacliff to own that liquor store.

Schuelein did not want to operate a liquor store and instructed DeCuollo to "pick a price and sell it as quick[ly] as possible to a qualified buyer." DeCuollo brought in Multani as a buyer. In August 2013, Multani entered into an agreement to purchase the stock of Seacliff from Schuelein. DeCuollo was not acting as Multani's agent in this transaction and explained so to Multani.

DeCuollo was able to negotiate the price downward from $650,000 to $350,000. Multani did not have the cash to pay the full amount, so DeCuollo brought in one of his clients, named Scott Bertani, who agreed to put up $225,000 of the purchase price of the Seacliff stock and, in exchange, receive 25 percent of the shares. As compensation for "putting the whole deal together," getting the pricing reduction,

4

bringing in Bertani, and not charging fees, DeCuollo would be paid $200,000 or 37.5 percent of Seacliff stock, whichever was greater, in two years' time. Attorney Warren Wimer drafted the Put/Call Option Agreement to place in writing the terms of this arrangement.

The Put/Call Option Agreement, like the Promissory Note, was dated August 5, 2013. The call option gave DeCuollo the right, at any time before August 5, 2015, to demand that Multani transfer to him either 50 percent or 37.5 percent "whichever is more" of the capital stock of Seacliff.[1] If DeCuollo did not make that demand, then Multani would pay him $200,000 or 50 percent of the equity in Seacliff, subject to Bertani's $225,000 ownership interest. The put option gave Multani the right to pay DeCuollo, at any time before August 15, 2015, $200,000 or 50 percent of the equity in Seacliff, subject to Bertani's $225,000 ownership interest. If Multani exercised the put option after DeCuollo had exercised the call option, then DeCuollo would have had to transfer back to Multani the shares obtained by exercising the call option and, in exchange, would receive the payment due under the put option.

Wimer explained the Put/Call Option Agreement to Multani and his wife. Multani never said he did not understand that agreement. Multani signed the Put/Call Option Agreement five times: twice as shareholder of Seacliff, once on behalf Seacliff, and once each as its secretary and as its president.[2] DeCuollo exercised the call option on July 12, 2014. He sought 37.5 percent of the shares of Seacliff.

---

[1] It seems that 50 percent would always be greater than 37½ percent, but the call option does state "whichever is more."

[2] The Put/Call Option Agreement was marked as trial exhibit 29 but never offered or received into evidence. Multani attached a copy of the agreement to the appellant's opening brief. DeCuollo and Barry have not objected.

## PROCEDURAL HISTORY

In July 2017, Multani and Seacliff filed a complaint against DeCuollo, Business Finders, and Barry. Although the complaint does not appear in the clerk's transcript, according to the respondent's brief the complaint sought damages for fraud and other causes of action and declarations that the Promissory Note and Put/Call Option Agreement were void. At the close of trial, Multani's counsel stated the only relief sought by the complaint was a finding the Promissory Note and Put/Call Option Agreement were void. DeCuollo filed a cross-complaint against Multani and Seacliff to enforce the Promissory Note.

Following a bench trial, the court issued a statement of decision in favor of DeCuollo, Business Finders, and Barry, and against Multani and Seacliff on both the complaint and the cross-complaint. The court found: "The evidence established that a dispute existed between . . . DeCuollo and a business [that] Multani ow[n]ed over certain commissions arising from the purchase of one liquor store and the attempted sale of another liquor store. The evidence established that the commission dispute was lawfully settled by the execution of the [P]romissory [N]ote in the negotiated amount of $68,000.00. The evidence established that . . . DeCuollo, a licensed real estate agent, had the legal right to negotiate the disputed commission due, and the evidence established that his arrangement with . . . Barry allowed him to do so as well."

The trial court found that Multani and Seacliff had produced no evidence against Business Finders or Barry that would support the causes of action alleged against them. On appeal, Multani and Seacliff do not challenge that finding.

The court found the Promissory Note was supported by adequate consideration, had no legal defects, and was in all respects valid and enforceable. The court found no evidence supported Multani's claims that the Promissory Note was procured by fraud, was a forgery, or was made in violation of DeCuollo's fiduciary

6

duties, and found Multani and Seacliff were in breach of the note for failing to pay it when due.

The court also found the Put/Call Option Agreement to be valid and enforceable, Wimer to be credible, and Multani understood the nature, terms, and content of the Put/Call Option Agreement, the terms and import of which had been explained to him by Wimer. The court found the Put/Call Option Agreement was supported by legal and adequate consideration, was not procured by fraud, and was not a gift of community property.

The court awarded judgment to DeCuollo in the amount of $68,000 plus prejudgment interest. In April 2019, a judgment was entered, from which Multani and Seacliff appealed.

## DISCUSSION

### I.

### Standard of Review

Three fundamental principles of appellate review are: (1) a judgment is presumed correct, (2) all intentions and presumptions are drawn in favor of correctness, and (3) the appellant bears the burden of proving error. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58 (*Fladeboe*).) When, as in this case, we review a judgment based upon a statement of decision following a bench trial, we review questions of law de novo and apply a substantial evidence standard of review to the trial court's express and implied findings of fact. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981; see *Fladeboe, supra*, 150 Cal.App.4th at pp. 59-60.)

In applying the substantial evidence standard, our task is to examine the entire record in the light most favorable to the judgment and determine whether there is evidence that is reasonable, credible, and of solid value to support the judgment. (*Ferguson v. Yaspan* (2014) 233 Cal.App.4th 676, 682.) We resolve all conflicts in the

7

evidence in favor of the judgment, we do not reweigh the evidence, and we are bound by the fact finder's credibility determinations. (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.) The testimony of a single witness may constitute substantial evidence. (*Ibid.*) As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the judgment and disregard contrary evidence and inferences. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) The test is whether the record contains substantial evidence in favor of the respondent, and "[i]f this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld." (*Ibid.*)

Multani and Seacliff did not object to the statement of decision or bring any ambiguities or omissions in it to the trial court's attention. We therefore infer the trial court made all implied factual findings favorable to DeCuollo on all issues necessary to support the judgment. (*Fladeboe, supra*, 150 Cal.App.4th at pp. 59–60.)

## II.

### The Promissory Note and Put/Call Option Agreement Are Valid And Enforceable.

In keeping with the first principle of appellate review, we presume the judgment is correct; that is, the Promissory Note and Put/Call Option Agreement are valid and enforceable, and DeCuollo is entitled to $68,000 in damages.[3] Multani and

---

[3] A promissory note is an unconditional promise to pay money, signed by the person undertaking to pay, and payable on demand or at a definite time. (*Saks v. Charity Mission Baptist Church* (2001) 90 Cal.App.4th 1116, 1132.) A promissory note is presumed to have been given for sufficient consideration and, in an action to recover on a promissory note, the introduction of the note in evidence establishes a *prima facie* right to recover according to its terms. (*Id*. at p. 1133.) The party seeking to avoid payment on the note has the burden of proving a defense to its enforcement. (*Ibid.*) DeCuollo established a *prima facie* right to recover under the Promissory Note by introducing it into evidence, thereby placing the burden on Multani and Seacliff to prove a defense to its enforcement.

Seacliff have the burden of proving error. To meet that burden, they argue the Promissory Note and Put/Call Option Agreement are unlawful and unenforceable because they are both disguised real estate commissions. According to Multani and Seacliff, fatal to both the Promissory Note and the Put/Call Option Agreement is the lack of a commission agreement between Multani and Barry, the real estate broker under whose license DeCuollo acted as salesperson.

A real estate sales license does not permit its holder to represent another unless the salesperson acts under a broker's authority. (*Venturi & Co. LLC v. Pacific Malibu Development Corp.* (2009) 172 Cal.App.4th 1417, 1423.) The broker under whose authority a sales person acts must be a party to the real estate contract. (*Id.* at p. 1424.) "No real estate salesperson shall accept compensation for activity requiring a real estate license from any person other than the broker under whom he or she is at the time licensed." (Bus. & Prof. Code, § 10137.)

Substantial evidence supports a finding there was an agreement between Multani and Business Finders that would permit DeCuollo to accept compensation. The trial court found that Barry was a licensed California real estate broker under whom DeCuollo worked as an agent on a flat fee basis and that DeCuollo's arrangement with Barry allowed DeCuollo to negotiate the disputed commission. We infer the trial court impliedly found there was a lawful contract between Multani and either Barry or Business Finders that permitted recovery of commissions. (*Fladeboe, supra*, 150 Cal.App.4th at pp. 59-60.)

Substantial evidence supports the trial court's express and implied findings. DeCuollo testified he owned Business Finders, for which Barry was the broker. DeCuollo testified that Business Finders had a written agreement with Barry under which Barry was paid $6,000 per year and, in exchange, Barry assigned commissions to DeCuollo. Multani and Seacliff did not make a secondary evidence rule (best evidence rule) objection to this testimony. (Evid. Code, §§ 1521, 1523, subd. (a).) DeCuollo

9

testified that "he," which we infer to mean Business Finders, had a written commission agreement with Multani. Multani and Seacliff again did not make a secondary evidence rule objection. DeCuollo testified the commission for the sale of King Liquor and the purchase of Valley Liquor were to be paid to Business Finders, which was a practice consistent with other transactions; for example, commission charges were paid to Business Finders for the sale to Schuelein of the property on which the Seacliff Liquor & Market was located.

Multani and Seacliff, in their reply brief, ask us to consider, as additional evidence, an unauthenticated report dated February 10, 2020 from the California Department of Real Estate purporting to show the licensing status of Business Finders. Multani and Seacliff concede this document was not presented at trial. We deny the request. The Court of Appeal's authority under Code of Civil Procedure section 909 to take additional evidence must be exercised sparingly, only to affirm, and never when substantial evidence supports the trial court's findings. (*Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1213.) The request to take additional evidence does not meet this standard.

Multani and Seacliff argue the Promissory Note lacked adequate consideration because there was no evidence any commissions would be earned if the King Liquor sale did not close. The trial court found the Promissory Note was supported by adequate consideration, and substantial evidence supports that finding. DeCuollo testified he entered into a written commission agreement with Multani which provided that (1) commission would be earned once DeCuollo found a "ready, willing, and able buyer" and (2) "[if] the seller breaches the agreement and causes the sale to cancel, I am owed a commission." No secondary evidence rule objection was posed. DeCuollo testified he found and obtained an offer from prospective buyer Pham, whom DeCuollo considered to a qualified buyer, and escrow was canceled unilaterally by Multani because his wife decided she did not want to sell the store. DeCuollo was owed a commission.

10

Multani and Seacliff argue the Promissory Note was "highly unusual and suspect" because there had been no attempt to collect on it for years and the font style was odd. They cite no authority or provide record citations for this argument, which appears never to have been made at trial. This argument is forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B) & (C); see *Ryan v. Real Estate of the Pacific, Inc., supra*, 32 Cal.App.5th at p. 644; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.) It is also an inherently fact-based argument that neither can nor should be resolved for the first time on appeal.

Multani and Seacliff argue the Put/Call Option Agreement was unenforceable because it was fraudulently procured and DeCuollo was acting as Multani's agent in the Seacliff Liquor & Market transaction. DeCuollo testified he did not act as an agent for Multani in the Seacliff Liquor & Market transaction, Multani knew DeCuollo was not his agent, and the entire transaction was explained to everyone by Wimer. The trial court found the Put/Call Option Agreement was not fraudulently procured, Wimer fully explained the terms and import of that agreement to Multani, Wimer's testimony was credible, and Multani fully understood the terms and import of the Put/Call Option Agreement. Testimony by DeCuollo and Wimer supports those findings.

Multani and Seacliff argue the Put/Call Option Agreement lacks adequate consideration. The trial court found the opposite to be true. DeCuollo's testimony about his effort in putting the transaction together supported that finding. Finally, Multani and Seacliff argue the Put/Call Option Agreement is "unconscionable and clearly the result of self-dealing and taking advantage of Appellant's trust and fiduciary duty." No legal authorities or record citations are offered in support of this argument. It is forfeited.

Multani and Seacliff assert, "where, as here the agent thinks he has a sucker who can be tricked into signing documents which, the courts must protect people from such actions, not condone or encourage agents to do this sort of thing!" We must respond

11

by admonishing Multani's appellate counsel on respect for the trial court, proper regard for the principles of appellate review, and basic civility and courtesy toward others. The trial court found that Multani had not been tricked into signing the Put/Call Option Agreement. The issue facing Multani, as appellant, is whether that finding was supported by substantial evidence, the relevant standard of review. Rather than try to meet that appellate burden and convince us of error, counsel has attacked the trial court's integrity by insinuating the court condoned or even encouraged fraudulent behavior.

## DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.


FYBEL, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.


12