Filed 12/8/20  Green v. Merlin Global Services CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| GLORIA GREEN, | B300432 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC697386) |
| v. |  |
| MERLIN GLOBAL SERVICES, LLC, |  |
| Defendant and Respondent. |  |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Holly J. Fujie, Judge.  Affirmed.

Peter Law Group, Arnold Peter and Eyal Farahan for Plaintiff and Appellant

Sheppard, Mullin, Richter & Hampton, Matthew S. McConnell and Matthew G. Halgren for Defendant and Respondent.

_____

Plaintiff Gloria Green was terminated from her employment with Merlin Global Services, LLC (Merlin) after she took a week off of work allegedly without approval and in violation of Merlin's leave without pay policy. She sued Merlin for race and gender discrimination, wrongful termination, and intentional infliction of emotional distress. The trial court granted summary judgment to Merlin, finding Green failed to raise a triable issue of fact that Merlin's reason for firing her was pretext for discrimination. We agree and affirm.

## BACKGROUND

Merlin specializes in providing flight operations, training, maintenance, and logistics services for manned and unmanned air vehicles. For many years, it subcontracted with General Atomics to provide onsite services at the Grey Butte Field Airport. Merlin maintains a team of five to 10 employees at Grey Butte.

Merlin hired Green in August 2011 to work at Grey Butte as a logistician, that is, a database manager. During Green's last year of employment, she reported to Jerry Roy, the Merlin site lead at Grey Butte, and Brady Minich, the manager who oversaw the Grey Butte team from Merlin's headquarters in San Diego. Prior to Minich, Jeremy Watrous was Green's manager.

Merlin's employee handbook governed the terms and conditions of Green's employment. When she was hired and whenever a new version was issued, Green signed an acknowledgement she received a copy. One policy in the handbook covered paid time off (PTO). In order to use PTO, an employee had to submit a request to his or her manager via the Time and Attendance payroll system.

In January 2016, Green told her then-manager Watrous that she was planning a trip to Belize in a few months. Because she believed she would not have enough PTO saved, she asked about requesting to go "negative" on her PTO. Watrous told her she would need to complete and submit a form in order to get approval. She submitted the form to go negative in her PTO by 74 hours, which Watrous approved.

In February 2017, Minich sent an email asking employees to forecast their PTO use. Green responded she intended to use PTO for several dates in May, and Minich informed her she had a negative PTO balance of 55.99 hours. He explained, "It's not Merlin's policy to allow negative PTO without approval and is usually an exception made on only rare occasions." Green understood she needed approval and ended up not requesting the time off.

In March 2017, Green told Jerry Roy she was planning to take time off from June 27 to July 5 to move her mother from Louisiana to California and she wanted to take a leave without pay for it. Roy responded he would have to let her know if that was acceptable. According to Green's deposition testimony, this was the first time she ever mentioned taking this time off.

In June 2017, Roy emailed Green and other employees about availability for a quarterly meeting with Minich. Green responded, "I will only be here on the 26th of that week. I'm on vacation 27 June through 5 July."

Minich visited Grey Butte on June 26, 2017, the day before Green's planned time off. He held a group meeting, which Green attended. Green did not remember what was discussed, but a major purpose of the meeting was to review various policies in the recently released June 2017 version of the employee

3

handbook.  Minich counseled employees on the PTO and leave without pay policies.  He explained employees would no longer be able to obtain approval to go negative on their PTO; instead, Merlin implemented a leave without pay policy to address special circumstances where an employee might need to take time off without sufficient PTO to cover it.  He further explained that "any request for leave without pay had to be done in writing through Unanet, the Company's electronic payroll and timekeeping system, and it had to be approved by a manager."

As written in the June 2017 handbook, the leave without pay policy provided:  "Leave without pay is not available to employees unless specifically authorized by a manager, and accompanied by a documented leave request.  If leave is taken without prior authorization it will result in disciplinary action." In his declaration in support of summary judgment, Watrous reiterated this meant that any leave without pay "must be requested in writing through the Company's electronic timekeeping and payroll system (Unanet) and it must then be approved by a manager."

Minich met with each employee individually on June 26, 2017, including Green.  Minich went over a self-evaluation and discussed various policies with her, including leave without pay and PTO.  Green told him she "would be out the rest of the week," but she did not say anything else about her leave request.

As planned, Green went to Louisiana on June 27, 2017. At her deposition, she recalled having only the three communications described above prior to leaving—the March 2017 conversation with Roy; the June 2017 email to Roy about her availability; and the June 26, 2017 conversation with Minich. She had a negative PTO balance and understood she needed to

4

comply with the leave without pay policy for this time off. Yet, she did not submit a written request to take leave without pay for the trip. According to Minich and Watrous, Green never requested or obtained authorization to take leave without pay for these dates.

Shortly after the June 26, 2017 meeting, Roy called Minich to ask if Green was out on approved leave. Minich said he had not approved any leave and informed human resources about her unapproved absence. Watrous—who was at that point the Vice President of Operations and General Manager at Merlin— reviewed the situation and brought in third-party human resources consultant Alisa Guralnick.

Watrous concluded Green had neither submitted the required written request for her leave nor received authorization from Minich. As a result, she had violated Merlin's leave without pay policy, despite having been counseled on it the day before she left. He concluded Green's employment should be terminated.

When Green returned to work on July 5, 2017, she met with Roy, Minich, and Watrous, the latter two participating by phone. Watrous told her she had violated the leave without pay policy by taking an unapproved leave. According to Watrous, Green responded, "Okay. So I screwed up. What's going to happen? Am I fired?" When asked about this at her deposition, Green testified, "I don't remember saying that, but I don't remember the call really." Watrous told her she was being terminated immediately.

Green gathered her belongings and left Grey Butte. Later that day, she received a letter that said, "In accordance with our policy on Leave Without Pay, and due to your failure to secure approval of the [leave without pay] prior to taking the time off,

5

we are terminating your employment effective immediately, July 5, 2017." Green testified at her deposition she was not "provided any other reasons for [her] termination from Merlin" beyond what was stated in this letter.

At her deposition, Green testified she did not know who was involved with the decision to terminate her employment. She admitted she never provided "any type of documented leave request for leave without pay" in writing.

Green sued Merlin, alleging claims for race and gender discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, subd. (a); all undesignated statutory citations refer to the Government Code); wrongful termination in violation of public policy; and intentional infliction of emotional distress.

Merlin moved for summary judgment. It argued Green's violation of Merlin's leave without pay policy constituted a legitimate, nondiscriminatory reason for her termination, and she presented no evidence to show this reason was pretext for discrimination. As evidentiary support, it submitted excerpts from Green's own deposition, as well as declarations from Minich, Watrous, and consultant Guralnick.

Merlin anticipated Green would rely on an argument that two male non-African American Merlin employees—Tyler Moorehead and Steve Ward—were treated less harshly than she was for workplace incidents. Minich addressed the Moorehead situation in his declaration: "On June 8, 2017, Tyler Moorehead sent an email to Steven Yamaguchi in which he voiced his concerns about Yamaguchi's leadership. I was Mr. Moorehead's manager and I was copied on the email. Mr. Moorehead was a Flight Test Engineer. Mr. Yamaguchi worked for Summaria,

which was the largest subcontractor at Grey Butte. The email copied numerous high ranking members of the Air Force and Summaria. Although I did not believe that Mr. Moorehead violated any Company policies by sending the email, I did not think it was the right approach to raise concerns. As a result, I counseled Mr. Moorehead about the email and the better options for raising such concerns in the future."

Watrous addressed the Ward situation in his declaration: "In approximately August 2016, I learned about a complaint by a General Atomics employee that a Merlin employee by the name of Steve Ward had knocked over a chair in a threatening manner at the Grey Butte facility. I personally visited Grey Butte to conduct an investigation. Mr. Ward was a Crew Chief Support Sr. for Merlin. Mr. Ward told me that he did not intentionally knock over the chair. I was unable to find any witnesses or other evidence to deny or confirm the complaint. Although I was unable to determine whether Mr. Ward intentionally knocked over a chair in a threatening manner, I made the decision to remove the site lead responsibilities from Mr. Ward."

When questioned at her deposition about Moorehead and Ward, Green admitted she had no personal knowledge of any investigation or discipline of either employee, other than Ward's demotion from site lead.

In opposition to the motion for summary judgment, Green argued Merlin's legitimate reason was "inherently implausible" and, as anticipated, she argued that Moorehead and Ward were subject to lesser discipline for other incidents. In support of her opposition, she presented her own two-page declaration containing six paragraphs.

7

In her declaration, she testified to an "exemplary work record" and "positive annual employment evaluations." As for her leave, she explained in paragraph 3: "In or about late May or early June 2017, I verbally requested time off from June 27, 2017 to July 4, 2017 from Roy so that I could travel to Louisiana and bring my 92-year-old mother back to California. Consistent with past practice and policy, I sought and received advance verbal approval from Roy for the absence. In addition, consistent with past practice and procedure, I recorded my absence in a department of the Air Force computer system that was designed for and consistently used by Gray [*sic*] Butte staff to communicate availability of Merlin's employees with each other and to the Air Force. Additionally, prior to taking my leave, I confirmed my absence from June 27, 2017 to July 4, 2017 in an email to Roy. Neither Minich nor Roy questioned me as to whether my planned vacation had been approved in writing."

In paragraph 6, she explained the circumstances surrounding the June 26, 2017 meeting with Minich. When Roy asked staff about availability for this quarterly check-up, she "informed Roy that I was leaving to pick up my mother in Louisiana on Tuesday, June 27 and his had [*sic*] been calendared since as early as April 2017 and that Roy had approved the leave in May or June 2017. Therefore, the check-up was scheduled for Monday, June 26. During the check-up, Minich and I discussed the fact that I was using Leave Without Pay ('LWOP'). At no time during the check-up did Minich mention that my LWOP was not approved. Earlier, Roy informed me that Merlin employee [sic] could no longer take LWOP, but that this particular LWOP had been previously approved."

8

On the issue of discipline of Tyler and Moorehead, Green declared in paragraph 4: "While imposing lesser forms of discipline as to these individuals, Defendant immediately and abruptly terminated me for my alleged failure to obtain prior written approval for my leave of absence." She said nothing more about Ward and Tyler or these incidents. She asserted in paragraph 5 that she believed she was terminated because she was an African-American woman, and she "was terminated when other male and non-African employees were not terminated for other instances of workplace misconduct."

Finally, Green argued Merlin's summary judgment motion was deficient because Merlin did not include a blank column for her responses in its separate statement of undisputed facts, as required by rule 3.1350(h) of the California Rules of Court. She did not respond to Merlin's separate statement. Instead, she submitted her own "Separate Statement of Undisputed Facts." She also objected to portions of the Guralnick declaration.

In reply, Merlin argued the court should ignore Green's declaration because it contradicted her deposition testimony. It also argued she failed to offer evidence of pretext. It contended Moorehead and Ward were not similarly situated to Green because they held different positions and the incidents had nothing to do with the leave without pay policy. It asserted evidentiary objections to nearly all of the substantive statements in Green's declaration. And it argued the court should deem all of its facts undisputed because Green did not respond to its separate statement of undisputed facts.

9

The trial court granted the motion. The court found Merlin's separate statement of undisputed facts did not comply with rules 3.1350(g) and (h) of the California Rules of Court, but it exercised its discretion to consider the motion.

The court also sustained Green's objections to the Guralnick declaration and sustained all but three of Merlin's objections to Green's declaration. As a result of sustaining Merlin's objections, Green's declaration was essentially gutted of substantive testimony. The court's ruling excluded (1) the entire paragraph 3 describing her alleged request for leave without pay; (2) her claim in paragraph 4 that Ward and Moorehead were subject to lesser discipline; (3) her statement in paragraph 5 that she was terminated "when other male and non-African employees were not terminated for other instances of workplace misconduct"; and (4) her description of the June 26, 2017 meeting with Minich in paragraph 6, including her positions that Roy approved her leave without pay "in May or June, 2017" and that she had discussed her leave without pay with Minich.

The court also found "conflicts in Plaintiff's declaration and deposition testimony. . . . While the court sustained various objections to Plaintiff's declaration on evidentiary grounds as explained below, Plaintiff's deposition testimony conflicts with statements in her declaration in many instances. Thus, even if the court had allowed the entirety of Plaintiff's declaration into evidence, there would have existed instances of conflict with her deposition testimony which is not allowed."

On the merits, the court held Merlin showed a nondiscriminatory reason for her termination and Green failed to offer evidence of pretext. It rejected Green's evidence regarding Moorehead and Ward because "Plaintiff stated in her deposition

10

that she did not know if Moorehead was disciplined [citation] and did not know what specific behavior of Moorehead led to his counseling by Defendant. [Citation.] With respect to Ward, Plaintiff testified at her deposition that she did not know whether the only action taken against Ward with respect to his using foul language against employees was his being demoted from his site lead position." The court found Green's deposition testimony conflicted with her declaration on these points. In any case, the court noted it excluded the statement in her declaration about Ward and Moorehead on evidentiary grounds. In other words, the court doubly rejected this evidence—it found her declaration statements about Ward and Moorehead inadmissible, and even if admissible, they could not be considered because they conflicted with her deposition.

The court granted the motion as to Green's claims for wrongful termination and intentional infliction of emotional distress because they rested on the viability of Green's discrimination claim. The court also granted the motion as to punitive damages. Green appealed.

## DISCUSSION

### 1. *Standards of Review*

"Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) As applicable here, moving defendants can meet their burden by demonstrating that 'a cause of action has no merit,' which they can do by showing that '[o]ne or more elements of the cause of action cannot be separately established . . . .' [Citations.] Once defendants meet this burden, the burden shifts to plaintiff

11

to show the existence of a triable issue of material fact. [Citation.]" (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253.)  We review the grant of summary judgment de novo. (*Ibid.*)

"In cases alleging employment discrimination, we analyze the trial court's decision on a motion for summary judgment using a three-step process that is based on the burden-shifting test that was established by the United States Supreme Court for trials of employment discrimination claims in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860 (*Serri*).)  The employer " 'has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors.' " (*Id.* at p. 861.)  If the employer meets this burden, the employee must " 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination . . . .' " (*Ibid.*)

The employee does not carry this burden by showing the employer's reason was unwise or incorrect.  " '[T]he ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*.  Thus, "legitimate" reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of discrimination.' " (*Serri, supra,* 226 Cal.App.4th at p. 861.) In other words, "an inference of discrimination cannot be drawn solely from evidence, if any, that the company lied about its

12

reasons."  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 360 (*Guz*).)

Summary judgment is warranted for the employer " 'if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.' [Citation.]  It is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive.  [Citations.]  Rather it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer." (*Serri, supra,* 226 Cal.App.4th at pp. 861–862.)

Notably, Green has not challenged any of the trial court's evidentiary rulings excluding most of her declaration from consideration on summary judgment.  " 'Where a plaintiff does not challenge the superior court's ruling sustaining a moving defendant's objections to evidence offered in opposition to the summary judgment motion, "any issues concerning the correctness of the trial court's evidentiary rulings have been waived.  [Citations.]  We therefore consider all such evidence to have been 'properly excluded.' [Citation.]" ' " (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1113 (*Roe*).)

**2.**    ***The Court Properly Considered Merlin's Separate Statement of Undisputed Facts***

Green initially argues the judgment should be reversed because Merlin's separate statement of undisputed facts did not comply with formatting requirements in rule 3.1350(h) of the California Rules of Court.  That rule requires the separate

13

statement contain two columns: a left column setting forth each undisputed material fact and citations of the supporting evidence; and a right column left blank for the opposing party's response. (*Ibid.*) Merlin acknowledges its separate statement did not comply with the rule because it omitted the blank right column for Green's response and instead placed the citations of its supporting evidence in that column.

Due to this formatting error, Green did not respond to the undisputed facts set out in Merlin's separate statement. Instead, she objected to it on formatting grounds. She suggested Merlin did not send her the file in Word format (Cal. Rules of Court, rule 3.1350(i)), so she claimed the only way she could respond "was to reconstruct the Separate Statement consisting of 42 pages with 416 allegedly separate statements." She filed her own "Separate Statement of Undisputed Material Facts." It set forth 22 allegedly undisputed facts, supported by citations of her own declaration, the declarations from Minich and Waltrous, and the June 2017 employee handbook.

In its summary judgment reply brief, Merlin explained it sent Green the moving papers over four months before her opposition was due, but Green never once complained about the separate statement formatting. Nor did Green request an electronic copy of the document until just days before the opposition was due. Merlin provided an electronic copy. Green did not complain until she raised the issue in her opposition to the motion for summary judgment. Merlin claimed this was a tactical decision, so the court should consider all of Merlin's facts undisputed.

14

The trial court found Merlin's separate statement violated formatting rules, which caused Green's separate statement to be formatted incorrectly.  The court nonetheless exercised its discretion to consider the motion.  (Code Civ. Proc., § 437c, subd. (b)(1).)

We review the trial court's decision to overlook the formatting error for abuse of discretion.  (*Rush v. White Corp.* (2017) 13 Cal.App.5th 1086, 1097.)  We find none.  The court was free to credit Merlin's explanation that Green did not object to the formatting error for months and did not request an electronic copy until days before her opposition brief was due.  Regardless, she did not stand idly by:  she filed her own separate statement setting forth her claimed undisputed facts with supporting citations of her evidence.[1]  This case was not complex.  The evidentiary record was not voluminous.  The court's decision to overlook the parties' formatting failures hardly "fall[s] outside the bounds of reason."  (*Id.* at p. 1098, internal quotation marks omitted.)

---

[1]     Green claims she suffered prejudice because the trial court failed to consider evidence that Roy had approved her leave and Ward and Moorehead were issued lesser forms of discipline for more serious conduct.  She is apparently referring to her own declaration on these points.  The court declined to consider this evidence not because the parties' separate statements were formatted incorrectly, but because it sustained Merlin's objections to these statements.

### 3. *There Is No Triable Issue of Race or Gender Discrimination*

<u>*Merlin Has Shown a Legitimate, Nondiscriminatory Reason*</u>
<u>*for Green's Termination*</u>

Both in the trial court and on appeal, Merlin assumed Green presented a prima facie case of race and gender discrimination, so it presented its legitimate, nondiscriminatory reason for Green's termination:  her violation of the leave without pay policy.  As outlined above, Minich and Watrous submitted declarations showing Green violated the leave without pay policy because she did not submit a documented leave request and obtain approval from her manager, Minich.  She took her unauthorized absence the day after she was specifically trained on the June 2017 employee handbook and the new leave without pay policy.  Merlin's "explanation of nondiscriminatory reasons was credible on its face" (*Guz, supra,* 24 Cal.4th at p. 357), and " 'unrelated to unlawful discrimination' " (*Serri, supra,* 226 Cal.App.4th at p. 861).

Green attacks Merlin's showing by claiming Merlin offered "conflicting reasons" for her termination—both the violation of the leave without pay policy *and* "job abandonment."  Her argument is premised on a single sentence taken out of Watrous's declaration:  "Based on my investigation, I concluded that Ms. Green had violated Merlin policy despite having been specifically trained on it on June 26, 2017.  I concluded that Ms. Green did not submit the required written request for time off without pay, nor did she receive authorization from her manager, Mr. Minich. *I felt that by disregarding Company policy and taking time off without approval, Ms. Green had in essence abandoned her job.* Based on the circumstances, and in particular the very recent

16

training on the time off policies, I made the decision to terminate Ms. Green's employment." (Italics added.)

As Watrous's full statement makes plain, no plausible reading of his testimony could support an inference that a *separate* and *conflicting* reason for Green's termination was "job abandonment." Watrous's comment simply explained how he viewed her violation of the leave without pay policy. At the time Green was fired, no one from Merlin suggested she was being terminated for "job abandonment" as opposed to violating the leave without pay policy. During the July 5, 2017 meeting, Watrous specifically told her she violated the leave without pay policy and was being terminated. The letter she received later the same day confirmed her termination was based on her leave policy violation. Most telling, Green herself testified at her deposition she was not "provided any other reasons for [her] termination from Merlin" beyond what appeared in this letter. Watrous's isolated and after-the-fact comment in his declaration does not create a genuine issue of material fact that Green was terminated for any reason other than violating the leave without pay policy.

Next, Green contends she did not actually violate the leave without pay policy. Instead, she claims she obtained "verbal approval" from Roy and documented it in an email and in the "Air Force computer system."[2] The only evidence she offered for this

---

[2]    Minich explained this "Air Force computer system" "is not a Merlin system, and it is not accessible except when onsite at Grey Butte and possessing an active Air Force network account. No Merlin employee at corporate headquarters can access this system. This system has nothing to do with Unanet (Merlin's electronic payroll and timekeeping system), nor does it have

position was paragraph 3 of her declaration. The trial court sustained Merlin's objections to that paragraph, so we may not consider it. (*Roe, supra,* 129 Cal.App.4th at p. 1113.)[3]  Green also argues the leave without pay policy required only a "documented leave request," not the use of the Unanet system as Minich claimed. She offered no evidence to rebut Minich's testimony that he told employees at the June 26, 2017 training to use the Unanet system to request leave without pay, which was consistent with the policy that any leave without pay request be "documented." In any case, Green did not comply with the leave without pay policy even as she understood it. Regardless of how a leave request must be "documented," she testified she never provided "any type of documented leave request for leave without pay" in writing.

---

anything to do with Company policy as to the process for submitting requests for time off including leave without pay. Prior to recently reviewing the pages marked as Exhibit 22, I did not ever see them before, nor did I ever access the Air Force calendaring system while I was Plaintiff's manager at Grey Butte, as this system was not a tool used by Merlin management including myself." At her deposition, Green similarly testified the Air Force computer calendaring system was used to communicate with Air Force and on site Merlin personnel, but entries did not go to Merlin's corporate office.

[3]      Green suggests we must accept her statement that she obtained approval from Roy because Merlin did not submit a declaration from Roy. She fails to acknowledge the court excluded her statement on evidentiary grounds, so no rebuttal evidence was necessary.

Merlin discharged its burden on summary judgment to provide a legitimate, nondiscriminatory reason for Green's termination.

*Green Failed to Offer Admissible Evidence of Pretext or Intentional Discrimination*

Green can only survive summary judgment if she offers " 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus." (*Serri, supra,* 226 Cal.App.4th at p. 862.)  Green offered no *direct* evidence of discriminatory animus.  At her deposition she admitted she had none.  She instead attempts to undercut Merlin's reason for terminating her—and thereby raise an inference of intentional discrimination—because (1) male non-African American employees Ward and Moorehead were subject to lesser discipline for workplace incidents; and (2) Merlin failed to follow its own internal policies prior to terminating Green.  We reject both points.

Initially, Green devotes significant effort to arguing the trial court erred when it disregarded portions of her declaration as conflicting with her deposition testimony. (See, e.g., *Whitmire v. Ingersoll–Rand Co.* (2010) 184 Cal.App.4th 1078, 1087.)  We need not address this issue.  Despite any conflicts between Green's declaration and deposition testimony, the court independently excluded nearly all of Green's declaration based on Merlin's evidentiary objections.  Green completely ignores these evidentiary rulings, so we must disregard the substantive portions of her declaration anyway.  (*Roe, supra,* 129 Cal.App.4th at p. 1113.)

19

On the merits, Green is correct that evidence of differential treatment of other employees can show pretext. (See *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 172 (*Wills*).) However, the comparable employees must be *similarly situated* to the plaintiff. (*Ibid.*) "Another employee is similarly situated if, among other things, he or she ' "engaged in the same conduct without any mitigating or distinguishing circumstances." ' " (*Ibid.*) When disparate discipline is involved, "it must appear 'that the misconduct for which the employer discharged the plaintiff was the same or similar to what a similarly situated employee engaged in, but that the employer did not discipline the other employee similarly.' " (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1535 (*McGrory*).)

The undisputed evidence showed the Ward and Moorehead incidents bore no resemblance to Green's leave policy violation. Moorehead sent an email that Minich did not think was the "right approach to raise concerns" but did not violate company policy. Ward was the subject of an unconfirmed complaint for knocking over a chair "in a threatening manner," which led Watrous to remove him as site lead. In contrast, Green clearly and directly violated the leave without pay policy despite being trained on the policy *the day before* she left. These disparate situations involved exactly the type of " ' "mitigating or distinguishing circumstances" ' " that justifies different treatment. (*Wills, supra,* 195 Cal.App.4th at p. 172; see *McGrory, supra,* 212 Cal.App.4th at p. 1536 [" 'Different types and degrees of misconduct may warrant different types and degrees of discipline.' "].)

Green's second pretext argument is that Merlin failed to follow its own internal procedures when it terminated her. This contention is a repackaging of her claim she had complied with the leave without pay policy, which we have rejected. She adds that the leave without pay policy provides that a violation of the policy could result in "disciplinary action," not necessarily termination. From that, she suggests, "Consistent with its pattern and practice, Green should have been afforded some lesser form of progressive discipline relative to the nature of her alleged offense, as were Ward and Moorehead." She has cited no evidence to show a "pattern and practice" at Merlin for "progressive discipline" that supported some lesser step before termination for a leave policy violation.

Finally, Green attempts to bolster her claim by citing recently enacted section 12923, subdivision (e), which provides that "*[h]arassment* cases are rarely appropriate for disposition on summary judgment." (§ 12923, subd. (e), italics added.) She has not asserted a harassment claim. Even if it she had, this provision cannot substitute for her lack of " 'substantial responsive evidence' " rebutting Merlin's showing of a legitimate, nondiscriminatory reason for her termination. (*Serri, supra,* 226 Cal.App.4th at p. 862.)

Summary judgment on her discrimination claim was proper.

### 4. *Summary Judgment Was Proper on Green's Remaining Claims*

On appeal, Green does not separately address her wrongful termination claim and appears to concede her intentional infliction of emotional distress claim rests on the viability of her discrimination claim. Because there is no triable issue of

21

discrimination, summary judgment on these dependent claims was proper.  (See *Gibbs v. Consolidated Services* (2003) 111 Cal.App.4th 794, 801.)  Without valid underlying claims, the trial court properly granted summary judgment on Green's request for punitive damages.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to costs on appeal.


BIGELOW, P. J.

We Concur:


STRATTON, J.


WILEY, J.