Filed 8/2/23  Cardenas v. Big Star Builders CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| JOSE CARDENAS et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BIG STAR BUILDERS, INC., <br><br> Defendant and Appellant. | F084745 <br><br> (Super. Ct. No. CV-21-005567) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  John D. Freeland, Judge.

Law Offices of Elvis Tran, Elvis Tran and Jason Hoang for Defendant and Appellant.

Golden & Cardona-Loya and Octavio Cardona-Loya II for Plaintiffs and Respondents.

-ooOoo-

Appellant Big Star Builders, Inc. appeals following the trial court's denial of its third petition for an order compelling arbitration and staying all proceedings. Appellant is seeking to force arbitration between itself and respondents Jose Cardenas and Elena Zarate Carrillo in lieu of the litigation respondents filed against appellant and several other companies who were involved in the installation of solar panels at respondents' home. For the reasons set forth below, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2021, respondents filed an action against appellant and several other companies, including Greensky, LLC, Equisolar, Inc., American Contractors Indemnity Company, and Wesco Insurance Company, alleging various causes of action related to what respondents contend was a botched sale and installation of solar panels at their home. According to respondents, they were approached by a salesperson, Noel Montoya, who was acting as an agent for appellant, Equisolar, Inc., and Greensky, LLC. Montoya made several claims regarding the proposed system, including that it would generate a specific amount of power, would eliminate respondents' electricity bill, and that respondents would be reimbursed for any failure on the part of the system to produce the promised quantity of electricity.

Respondents were charged and paid at least $10,000, allegedly before any work was commenced, yet found that the system installed failed to generate the proper amount of power and eliminate their electric bill. They did not receive reimbursement for the underperformance. Respondents alleged the work performed was eventually found to be substandard, that attempted repairs not only failed to fix the problems but further damaged their property, and that additional promises not kept by appellant and the other companies resulted in respondents being told by Greensky, LLC that they would be required to pay late charges for fees that were supposed to be covered by appellant.

2.

Respondents further allege that Equisolar, Inc. forged Cardenas's signature on permit applications related to the work. And respondents note that while the negotiations were done in Spanish and appellant's documents were provided in Spanish, additional documents provided by Greensky, LLC were in English.

In response to this litigation, appellant filed a motion to compel arbitration between itself and respondents. Appellant argued it had entered into a contract with respondents and that contract included an arbitration clause, which appellant requested be enforced. Appellant attached a copy of the contract, a translation into English, and a declaration from one Isaac Hernandez, who claimed to be the operations manager for appellant and who stated he was "familiar with all aspects of the Contract." The court ultimately denied this first motion without prejudice, finding the purported contract was not properly authenticated, the translation did not meet requirements of the California Rules of Court, and that the parties should further meet and confer on the issue.

A short while later, appellant filed a second motion to compel arbitration. In that motion, appellant sought to correct the translation and authentication issues and noted that further meet and confer efforts were not successful. Appellant again requested the court compel arbitration between appellant and respondents. In support of the authentication claim, appellant submitted a new declaration from Hernandez, stating, "I executed the contract" and "swear that it is authentic."[1] This time, rather than claiming to be an employee of appellant, Hernandez claimed he was "Operations Manager of … Equisolar, Inc."[2]

---

[1]    Notably, neither Hernandez's name nor his signature appear on the contract. Rather, the only name potentially associated with appellant is that of the salesperson, Montoya.

[2]    When this change was pointed out, appellant submitted a revised declaration stating Hernandez was "the Operations Manager of both … Equisolar, Inc., and [appellant]."

Respondents objected to the authentication efforts and the court again denied the motion to compel, granting their objections and holding the contract had not been authenticated.

Several months later, appellant filed a third motion to compel arbitration. This time, appellant relied on assertions that respondents not only entered into and signed the contract, but had affirmed the existence of the contract by referencing it in their complaint, along with another declaration from Hernandez to authenticate the contract. Appellant conceded that only Carrillo's signature appeared on the purported contract but asserted she had signed "on behalf of both" her and Cardenas.

Hernandez's declaration was more extensive than his prior ones. First, Hernandez stated his position was "Operations Manager of … EQUISOLAR[,] INC." Hernandez then claimed appellant was the principle and Equisolar, Inc., Greensky, LLC, and American Contractors Indemnity Company were agents of appellant in the business of solar panel installation and financing. Hernandez declared the relevant contract, which was attached in its original Spanish form, was "created by our employees," in the regular course of business, at or near the time of the installation agreement. The contract was "the standard sales agreement used by" appellant and is presented "to all our solar panel customers." Hernandez declared his "employee, Noel Montoya, followed all company protocols and procedures" when presenting the contract to Carrillo, but said nothing of discussions with Cardenas. Throughout, Hernandez made several statements asserting he was aware of the normal procedures for creating and presenting this type of contract, had personal knowledge of the contract generally, and had personal knowledge of the contract and work done at respondents' home.

Respondents again opposed the motion. They raised several arguments. First, respondents argued the court should not compel arbitration against non-signatories, identified as all parties other than Carrillo. Respondents alleged there was no evidence submitted that Carrillo acted as Cardenas's agent and noted that the agreement could only

4.

cover "disputes between [Carrillo] and [appellant]." Respondents then challenged the evidence seeking to authenticate the contract, noting that Hernandez lacked personal knowledge related to the contract because he was not an employee of appellant and therefore could not authenticate that the agreement the contract proffered was authentic or otherwise lay proper foundations for the introduction of appellant's business records. Coupled with this argument, and submitted separately, were 10 objections to portions of Hernandez's declaration. Next, respondents alleged the contract was unconscionable and thus unenforceable. Finally, respondents asserted enforcement was not proper under Code of Civil Procedure section 1281.2, subdivision (c),[3] based on the risk of conflicting rulings involving parties not bound by the arbitration agreement.

The trial court issued a tentative ruling and held a hearing at which the parties presented brief arguments. The court then denied appellant's third motion to compel arbitration. In doing so, the court noted that the "motion remains deficient in that it is not supported by admissible evidence, as the purported arbitration agreement has not been properly authenticated." Relatedly, the court sustained respondents' objections to Hernandez's declaration "on the grounds stated" and explained the "declaration is insufficient to authenticate the subject agreement." Finally, the court added that, in addition to the evidentiary issues, "the Court finds that an order compelling arbitration in this instance would create the possibility of conflicting rulings on common factual and/or legal issues" because "the allegedly arbitrable claim arises out of the same transaction(s) as the non-arbitrable claims." Thus, citing section 1281.2, subdivision (c) the court explained that even if an arbitration agreement existed, "the matter is not appropriate for arbitration under the circumstances."

This appeal timely followed.

---

**3**    Undesignated statutory references are to the Code of Civil Procedure.

## DISCUSSION

### *Standard of Review and Applicable Law*

" ' "There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed." ' " (*Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 591 (*Chambers*).) " 'Trial court rulings on the admissibility of evidence … are generally reviewed for abuse of discretion.' " (*Ibid.*)

"California statutes create a 'summary proceeding' for resolving petitions or motions to compel arbitration. [Citation.] 'The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.] In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.' " (*Chambers*, *supra*, 71 Cal.App.5th at p. 590, first bracketed insertion added.)

" 'Thus, our Supreme Court has clearly stated that a court, before granting a petition to compel arbitration, *must* determine the factual issue of "the existence or validity of the arbitration agreement." [Citation.] In this way, a court's role, though limited, is critical. "There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable." ' " (*Chambers*, *supra*, 71 Cal.App.5th at p. 590.)

***Appellant Has Waived Any Challenge to the Exclusion of Hernandez's Declaration***

The trial court's first ground asserted for denying appellant's third motion to compel arbitration was its conclusion that appellant had failed to properly prove that an arbitration clause existed in this case. As part of its ruling on that point, the trial court specifically sustained 10 objections raised by respondents that challenged Hernandez's declaration seeking to authenticate the purported contract that contained the alleged arbitration clause. On appeal, appellant makes no legally relevant mention of this aspect of the trial court's ruling, despite directly quoting it in its fact section. Appellant's conduct has affirmatively waived any assertion that the trial court wrongly excluded Hernandez's declaration. (See *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114 ["[Appellant's] brief on appeal fails to identify the court's evidentiary ruling as a distinct assignment of error, and there is no separate argument heading or analysis of the issue. That alone is grounds to deem the argument waived."].)

Perhaps aware of this shortcoming, appellant argues from the position that there is no basis to reject its submission of the proffered arbitration clause because respondents have alleged the existence of the agreement in their complaint. But this argument proves nothing. Respondents' complaint does not reference the arbitration clause nor any specific terms of the contract, other than to claim that some agreement exists, and respondents did not attach any documents to their complaint. Accordingly, while there is an admission that some agreement exists, there is no basis to conclude, based on the complaint alone, that the documents submitted by appellant are, in fact, representative of the agreement referenced by respondents in their complaint.

Appellant therefore needed more than an unsupported claim an arbitration agreement existed to compel arbitration. " ' "Under 'both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate.' " ' [Citations.] The threshold question requires a response because if such an agreement exists, then the court is statutorily required to order the

7.

matter to arbitration" absent a statutory basis not to do so. (*Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 19.) " 'To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.' " (*Id.* at p. 20.) When the trial court excluded Hernandez's declaration and found the proffered agreement lacked foundation, it did not error; there was no remaining evidence to prove that the agreement presented to the court was, in fact, the agreement appellant referred to.

### *Appellant Has Waived Any Challenge Under Section 1281.2, Subdivision (c)*

The trial court's order in this case rests upon a secondary ground, the court's conclusion that even if an arbitration clause exists, the risk of conflicting rulings means the arbitration clause should not be enforced. Astoundingly, appellant does not mention this aspect of the court's ruling in its opening or reply brief, nor does it ever discuss section 1281.2, the provision relied upon by the trial court. Appellant has therefore waived any argument on this point. (*Save Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 704, fn. 14.) Moreover, appellant's complete failure to dispute one of the two aspects underlying the trial court's order is fatal to its appeal. (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125–126.)

Even if not waived, we see no error in the trial court's ruling. Section 1281.2, subdivision (c), provides that "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] … [¶] (c) A party to the arbitration agreement is also a party to a pending court action … with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." The statute further explains that if "the court determines that a party to the arbitration is also a party to litigation in a pending court action … as set forth under subdivision (c), the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action." (§ 1281.2, subd. (d).) The statute has long been held to permit a court to refuse to order arbitration,

even when a valid arbitration provision exists and even when proceedings are subject to the Federal Arbitration Act (9 U.S.C.S. § 1 et seq.). (See *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 [noting § 1281.2, subd. (c), "is an evenhanded law that allows the trial court to stay arbitration proceedings while the concurrent lawsuit proceeds," which does not conflict with the Federal Arbitration Act].)

In this case, the arbitration agreement submitted to the court limits arbitration to "disputes between [Carrillo] and [appellant]" and specifically notes this "means that the arbitration shall not address disputes that involve other persons with disputes similar to the [d]isputes between [Carrillo] and [appellant]." Given this language, we see no error in the trial court's determination that the existence of multiple subcontractors or related parties in the installation of a single solar project could result in inconsistent rulings on issues of fact or law if claims related to that installation were sent to arbitration with respect to appellant only. Under section 1281.2, the trial court could therefore refuse to compel arbitration even if it found a sufficient foundation for the arbitration clause and assumed it was applicable.

## DISPOSITION

The order denying appellant's third petition for an order compelling arbitration and staying all proceedings is affirmed. Costs are awarded to respondents.

HILL, P. J.

WE CONCUR:

LEVY, J.

MEEHAN, J.

9.