Filed 12/28/22  Robertson v. Ampla Health CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| TIFFANY ROBERTSON, | C094596 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CVCS19-0001445) |
| AMPLA HEALTH, | |
| Defendant and Respondent. | |

Ampla Health (Ampla) terminated Tiffany Robertson (Robertson), an African-American woman, from her position as chief financial officer (CFO).  Robertson in turn sued Ampla for race and gender discrimination, retaliation, and wrongful termination.  Ampla moved for summary judgment or, in the alternative, summary adjudication.  The trial court granted the motion in full, finding no triable issue of material fact as to any of Robertson's causes of action.  Robertson timely appeals, arguing that the trial court's ruling was erroneous.  We disagree and will affirm.

1

FACTUAL AND PROCEDURAL HISTORY

I

*Factual Background*

A.  *Ampla hires Robertson*

Ampla is a private, not-for-profit corporation that provides health care services to low income families in California's northern Sacramento Valley.  On August 8, 2016, Ben Flores (Flores), Ampla's chief executive officer, hired Robertson to be Ampla's CFO.  Before hiring Robertson, Flores interviewed Robertson and negotiated her employment terms, including an annual salary of $160,000—Ampla's highest salary for a CFO to date—plus $15,000 in moving expenses.  Flores offered Robertson her moving expenses as an exception to Ampla's standard policy because of his strong desire to hire Robertson.  Robertson understood her employment was "at will" and that, although she was an exempt employee, she was required to work 40 hours per week.  For the duration of Robertson's employment, Flores was Robertson's supervisor, and Theresa Anaya (Anaya) served as Ampla's human resources director.

At the beginning of her employment, Flores informed Robertson that her presence in the office was important in her executive role.  Robertson acknowledged that she understood the importance of leadership visibility and accountability in her role. Robertson also received Ampla's employee handbook, which contained a section called "Harassment Complaint Procedure."  It stated that she was to report harassment to her supervisor (Flores) or to the human resources department, but that any complaints regarding her supervisor should be made through a complaint filed with human resources.

B.  *Robertson's complaints and performance issues during her employment*

On October 17, 2016, Flores asked Robertson to call him after she attended a finance committee meeting because he was out of town during the meeting and needed to be prepared to answer Ampla's board members' questions regarding Ampla's deteriorating cash flow.  Robertson did not make contact with Flores to provide the

2

information he requested.  The following day, Flores called Robertson, and Robertson dismissed their failure to connect on the telephone as "not being a big deal."

On October 25, 2016, Flores met with Robertson to discuss multiple complaints he had received from employees that Robertson was harsh, negative, and unapproachable with her staff.  This included a complaint from Ampla's chief operations officer (COO), Carlos Peralta (Peralta), that Peralta did not like working with Robertson because of her attitude and demeanor.  Robertson told Flores that Peralta's statement about her was false, and that she believed his false accusation was "due in part to Peralta's negative attitude towards women," as she found him "hostile, dismissive, and discourteous" towards her but not towards men.  Robertson also told Flores that "other employees" told her "they believed Flores treated women differently" than men at work.  And, Robertson informed Flores that she "was aware that [Flores] did not like Black people."  Flores asked why she believed that, and she responded, " '[P]eople talk, and people talk to me, and they say things, and I know that's the way you are.' "  She said that it "was [her] belief" that he did not like working with Black women, and that is why she was "being subjected to this treatment."

On October 31, 2016, Robertson wrote to Flores via e-mail about their conversation, stating that Peralta "lie[d] to you about me," and representing that "[s]everal other staff members and board members have told me that they are glad that I am here and that they think that I am doing a great job."  She further said it was unfair that while Peralta also did not follow one of Flores's directives and communicated a "completely fabricated" story about Robertson, Flores permitted Peralta to go to a Las Vegas conference, but not Robertson.  Flores wrote back, explaining that he decided to cancel her trip to the Las Vegas conference because he needed her at the office to start working on the plan of action requested by the finance committee, and because he needed her to oversee the audit.  He also wanted to ensure that Flores and Robertson were "on the same page" before investing in trips and conferences for Robertson.

3

On November 14, 2016, Flores e-mailed Robertson to inform her that when she presented information to Ampla's board, he expected she would provide the board with the most accurate information possible. He also stated that his expectation was that Ampla's finance team would agree with information she presented to the board. Flores was always troubled by the "very negative" way in which Robertson presented Ampla's financial status to the board and encouraged her to present Ampla's financial condition as a whole. To help Robertson prepare for her presentations to the board, Flores gave her the book "How to Lie with Statistics," because the purpose of the book was to give readers tools to critically review numbers. He believed the book would help Robertson understand how bare presentation of numbers could be misleading, which in turn would help her create a more engaging and consumable presentation to the board. Flores did not ask Robertson to provide false information to the board. Robertson did not read the book "How to Lie with Statistics."

On December 19, 2016, Flores denied Robertson's request to work from home when she had conjunctivitis (pink eye). However, Rocio Valdez (Valdez), Ampla's director of communications, who was not African-American, was regularly permitted to use flex time to come into the office late and leave early. Unlike Robertson, whose job required leadership visibility and accountability, the nature of Valdez's work required her to work evenings and weekends so she could attend marketing events, which is why Flores allowed her a flexible schedule. No other executive-level employee was permitted to work from home. Robertson perceived Flores's denial of her work from home request to be racially biased because he permitted Valdez, a non-Black employee, to work from home.

On December 20, 2016, against Flores's directive, Robertson disclosed confidential information to the board regarding ongoing contractual negotiations. Further, the information was not accurate. Flores e-mailed Robertson to express his displeasure with her presentation of inaccurate and confidential information, but he did

not formally discipline Robertson.  Robertson responded via e-mail in a manner Flores interpreted as blaming him for her mistakes, as Robertson noted that she shared and discussed the draft report with Flores before the meeting, indicating that he could have reviewed the draft and objected.  She further wrote to Flores, "[Y]ou are creating a hostile work environment for me simply because I am doing my job."  Flores responded that he gave all the executive and management team members the same directive and expected the same from all, but that Robertson was the only team member who did not comply.

On April 28, 2017, Robertson left work early to fly to Chicago without informing Flores.

On April 30, 2017, Robertson sent a text message to board treasurer, Liz Skelly (Skelly), about Flores's behavior towards women and what she perceived to be his discrimination against Black and/or female employees.

On May 1, 2017, Flores met with Robertson to provide her with a mid-term performance evaluation.  The evaluation identified various performance issues, including Robertson's failure to comply with Ampla's attendance policy, and staff complaints regarding Robertson's unavailability and lack of office presence.  Due to Robertson's performance issues, Flores prepared an action plan for Robertson to complete before her annual review.  Part of the action plan required Robertson to arrive at work by 8:00 a.m., but no later than 9:00 a.m.  Flores also told Robertson that it was not appropriate for exempt employees, such as Robertson, to leave the office earlier than authorized in conjunction with a weekend or authorized time off.  However, on May 26, 2017, Robertson again left work early to catch a flight to Chicago without requesting paid time off (PTO) in advance.  Flores reminded Robertson of Ampla's attendance policy but did not formally discipline her.  Thereafter, he informed Robertson that she was not permitted to attend a May 2017 conference because she had already exceeded her allotted

5

PTO.  Robertson complained to Flores that this was unfair because Flores permitted Peralta and other non-Black male executive team employees to travel for conferences.

Also in May 2017, Robertson met with Dr. Sergio Riffel (Riffel) as part of her job duties.  Riffel "stared menacingly" at Robertson and said, " '[Y]our people have not been treated well.' "  Robertson was not certain what Riffel was talking about, but she took the statement as a negative comment about Black people.  Robertson complained to Anaya about Riffel's statement, but Ampla did not investigate the incident.

On August 23, 2017, Robertson met with Flores for her annual performance review.  The review indicated that Robertson had made few improvements since her mid-term evaluation, and that Robertson failed to address or satisfy the majority of the six areas of improvement listed in her action plan.  Following her review, Ampla did not give Robertson a merit-based increase in salary, based on her poor performance.  However, Robertson did receive an annual salary adjustment, increasing her salary by $5,120.05.  Robertson complained to Flores and Anaya that Ampla's denial of her merit-based pay increase was discrimination because she was the only executive team member that did not receive one, despite an audit revealing negative findings in other team members' areas of responsibility.

On September 1, 2017, Robertson asked Anaya how to file a grievance against Flores.  Anaya directed Robertson to the complaint procedure outlined in the employee handbook that Robertson had received upon her hiring.  Robertson told Anaya that she would consult with her own attorney about filing a complaint.  However, she never filed a complaint because she was in the middle of an audit and was busy.

On September 5, 2017, Robertson failed to arrive at work by 1:00 p.m. and did not directly disclose her absence to Flores or Anaya, in violation of her action plan.  Because Robertson arrived late, Flores sent her home.  He also e-mailed Robertson to inform her that September 5 would therefore be treated as unpaid leave.  Robertson sent a text

6

message to Anaya, complaining that Flores violated the California Labor Code by threatening to dock her pay. Ampla did not end up docking her pay.

On September 11, 2017, Flores told Robertson she could not attend any conferences until she completed two webinar/workshops that were part of her action plan to assist with her professional growth.

In October 2017, Ampla hired an outside trainer to conduct a two-day cultural awareness training program for the office. During the first day, the trainer used the "N-word" as an example of a derogatory word specific to certain ethnic groups. Immediately thereafter, Robertson reported to Anaya that she was appalled by the trainer's use of the "N-word." Anaya relayed Robertson's complaint to Flores that same day. The following day, the trainer apologized to everyone in attendance for her use of the "N-word."

In November 2017, Robertson told a recently hired member of the executive team, John Lott (Lott), that Peralta humiliated female employees, and Lott shared Robertson's view with Flores. Flores did not take any action in response.

C.      *Robertson's leave request*

On September 11, 2017, Flores approved Robertson's request for an intermittent leave of absence under the Family Medical Leave Act (FMLA) (29 U.S.C. § 2601 et seq.) and the California Family Rights Act (CFRA). (Gov. Code, § 12945.20.)[1] In her request, she asked for intermittent leave from September 26, 2017, through November 26, 2017, because she needed flexibility to assist her pregnant daughter. On her leave request form, Robertson indicated that she needed to use "one to two weeks" of FMLA/CFRA leave. Robertson used one week of her approved leave to visit her daughter and returned to work by mid-October. Thereafter, Robertson did not ask to return to Chicago again to

---

[1]      Undesignated statutory references are to the Government Code.

7

assist her daughter using family leave.  Nor did Robertson's daughter ever notify her that she needed Robertson to return to Chicago.

D.    *Ampla's financial condition and Robertson's termination*

Prior to and throughout Robertson's employment with Ampla, Ampla's financial condition was a concern.  By the end of the 2016-2017 fiscal year (June 30, 2017), cash flow had significantly deteriorated.  Robertson admits that as of August 2017, Ampla's cash flow had not improved during her tenure.  In September 2017, Ampla lost $704,582. On October 24, 2017, Robertson presented Ampla's September 2017 financial statement to the finance committee, which showed that Ampla was continuing to operate at a loss, as Ampla's monthly cash receipts did not meet its payment obligations.

On October 31, 2017, Robertson presented a financial report to the board.  In her presentation, Robertson disclosed that due to Ampla's sustained financial losses and her future projections, Ampla only had two months of reserves to remain financially viable. As a result, she recommended to the board that Ampla cut costs.  Disturbed by Robertson's grim projections for Ampla's financial viability, the board instructed Flores to create an action plan to address Ampla's monetary condition.

By November 2017, Robertson knew Ampla's finances were in trouble.  In response to Robertson's presentation to the board and the board's instructions, Ampla decided to implement a corrective action plan to reduce costs.  The corrective action plan provided for numerous changes, including the elimination of staff positions.

On November 17, 2017, Flores decided to eliminate Robertson's position as Ampla's CFO.  Flores represents that his decision was based on Ampla's financial condition as reported by Robertson.  As the CFO position had been vacant for months prior to Robertson's hire, Flores decided that experienced members in Ampla's finance department could assume Robertson's responsibilities.  His other stated reason for termination was that Robertson's " 'performance and interpersonal skills were lackluster.' "  Robertson believed her layoff was discriminatory because she had never

8

seen a company lay off their CFO, and she found it very unusual that Ampla was doing so.

## II

*Procedural History*

Robertson filed a verified complaint against Ampla alleging eight causes of action for (1) race-based discrimination (§ 12940, subd. (a)); (2) hostile work environment harassment based on race and/or sex/gender (§ 12940, subd. (j)); (3) sex/gender-based discrimination (§ 12940, subd. (a)); (4) whistleblower retaliation in violation of the Fair Employment and Housing Act (FEHA) (§ 12940, subd. (h)); (5) CFRA retaliation (§ 12945.2 et seq.); (6) failure to prevent harassment, discrimination, and/or retaliation (§ 12940, subd. (k); (7) violation of Labor Code sections 98.6 and 1102.5; and (8) wrongful termination in violation of public policy. Robertson subsequently dismissed her second cause of action for hostile work environment harassment based on race and/or sex/gender.

Ampla moved for summary judgment or, in the alternative, summary adjudication, and Robertson opposed the motion. At the summary judgment hearing, the trial court permitted the parties to submit supplemental briefing regarding the trial court's rulings on Ampla's evidentiary objections. Following the receipt of the supplemental briefs, the trial court issued a ruling granting Ampla's motion for summary judgment in its entirety. In doing so, it sustained 49 of Ampla's 54 evidentiary objections in whole or in part. Robertson timely appeals.

## DISCUSSION

Robertson contends that triable issues of material fact exist as to each of her alleged causes of action. We address each cause of action in turn.

# I

## *Summary Judgment Principles*

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. [Citation.] The burden of persuasion remains with the party moving for summary judgment. [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003; Code Civ. Proc., § 437c, subd. (c).) Thus, a defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. ([Code Civ. Proc.,] § 437c, subd. (*o*)(1).)" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; Code Civ. Proc., § 437c, subd. (*o*)(2).) Such a defendant also "bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists. Once the initial burden of production is met, the burden shifts to the [plaintiff] to demonstrate the existence of a triable issue of material fact." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250.)

On appeal, we review the trial court's summary judgment decision independently, " 'considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1113, italics omitted.) "While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny. [Citation.] We can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.]" (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)

Further, the appellant has the burden of showing error, even if the appellant did not bear the burden in the trial court, and " 'to point out the triable issues the appellant

10

claims are present by citation to the record and any supporting authority.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) We "affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court. . . . [Citations.] Thus, we must affirm so long as any of the grounds urged by [defendant], either here or in the trial court, entitles it to summary judgment." (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481.)

II

*Evidentiary Objections*

We first address the portion of the trial court's ruling sustaining in whole or in part 49 of Ampla's 54 evidentiary objections. Despite the rulings on these objections, Robertson's opening brief relies on much of the excluded evidence without challenging the rulings or otherwise arguing that any of the evidence was improperly excluded.

" 'Where a plaintiff does not challenge [on appeal] the superior court's ruling sustaining a moving defendant's objections to evidence offered in opposition to the summary judgment motion, "any issues concerning the correctness of the trial court's evidentiary rulings have been waived. [Citation.] We therefore consider all such evidence to have been 'properly excluded.' [Citation.]" [Citations.]' [¶] The reason for this rule is that '[t]rial courts have a duty to rule on evidentiary objections.' [Citation.] '[R]uling on such evidentiary objections can involve a number of considerations more suited to the trial court than the appellate courts, including an exercise of discretion in establishing the record to be reviewed de novo.' [Citation.]" (*Roe v. McDonald's Corp., supra*, 129 Cal.App.4th at pp. 1113-1114.)

As Robertson did not challenge the trial court's evidentiary rulings, we are bound by them and may not consider any of the excluded evidence on appeal.[2]

### III

### *The FEHA—Gender and Race Discrimination*

Robertson first argues that she has established a prima facie case for race and gender discrimination, and further asserts that there is a triable question of material fact as to whether Ampla's stated reasons for its adverse actions against Robertson were discriminatory or otherwise pretextual. We conclude that summary adjudication of Robertson's discrimination claims was proper.

A.    *Applicable legal principles*

Pursuant to the FEHA, it is an unlawful employment practice for an employer, "because of the race [or] sex . . . of any person, . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (§ 12940, subd. (a).)

The framework for determining the existence of a cause of action for race or gender discrimination is as follows: "Under well-settled rules of order of proof, the employee must first demonstrate a prima facie showing of prohibited discrimination." (*Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 613, citing *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802 [36 L.Ed.2d 668, 677] (*McDonnell Douglas*).) To establish a prima facie case for race or gender discrimination, the employee must show that (1) she was a member of a protected class; (2) she was

---

[2]    Robertson's extensive reliance on excluded evidence in her briefs violates California Rules of Court, rule 8.204(a)(1)(C), which limits factual citations in the parties' briefs to admitted evidence that is part of the record on appeal. Robertson's counsel's failure to comply with this fundamental rule of appellate practice created a confusing record that has frustrated appellate review, causing this court to needlessly spend time parsing the record to identify excluded evidence.

performing competently in her position; (3) she suffered an adverse employment action; and (4) some other circumstance suggests a discriminatory motive. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*).) If the plaintiff establishes a prima facie case, a presumption of discrimination arises. (*Ibid.*) The employer must then rebut the presumption by producing admissible evidence supporting a legitimate nondiscriminatory reason for the adverse employment action. (*Ibid.*) If the employer does so, "the presumption of discrimination disappears." (*Id.* at p. 356.) Then, "to avoid summary judgment, an employee claiming discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004-1005.) "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." (*Guz, supra*, at p. 356.)

B.    *Discussion*

    1.    *Ampla's adverse employment actions*

We initially consider whether the many purportedly adverse actions that Robertson alleges she suffered qualify as such under the law. Specifically, Robertson alleges that Ampla took multiple adverse employment actions against her that were motivated by gender and/or race-based discriminatory animus,[3] including: denying Robertson's request to work from home on the day she had pink eye; giving Robertson a negative review; disallowing Robertson to attend conferences; asking Robertson to leave work early on a day that she failed to arrive at work by 1:00 p.m. and did not directly disclose

---

[3]     Robertson also alleges these adverse actions form the basis of her FEHA retaliation claim, and the same analysis regarding which actions qualify as adverse employment actions applies to her FEHA retaliation cause of action.

her absence to Flores or Anaya, in violation of her action plan; threatening to withhold pay (which was not actually withheld) for that same day; declining to give Robertson a merit-based pay increase; and terminating her employment. We conclude that the majority of these actions do not qualify as adverse employment actions.

An adverse employment action "must be both detrimental and substantial" (*Thomas v. Department of Corrections* (2000) 77 Cal.App.4th 507, 511), and requires a " 'materially adverse change in the terms of . . . employment.' " (*Ibid.*) Though case specific, examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." (*Ibid.*) However, "one time events, such as a delayed check, an early job change, and failure to receive one overtime check" are typically not sufficient. (*Ibid.*) "A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1455.)

Relying on these principles, Ampla argues that Robertson's termination is the only true adverse employment action alleged. Robertson does not address this contention. Further, Robertson's arguments regarding her claims for gender discrimination, the CFRA, and retaliation, rely solely on Robertson's termination as the adverse employment action. Only her arguments in support of her racial discrimination claim touch upon the other alleged adverse actions as the basis of her claim, though these incidents are primarily referenced as evidence of discrimination rather than as separate adverse employment actions.

We conclude that while Robertson's termination constitutes an adverse job action, the denial of Robertson's merit-based raise could also potentially qualify as an adverse action for purposes of her discrimination claims. However, Robertson has not provided evidence showing that any of the other alleged adverse actions reflected a materially

14

adverse change in Robertson's job duties or compensation. Indeed, those actions are minor or one-time events, and are potentially relevant only as evidence of discrimination.

### 2. *Ampla's legitimate, nondiscriminatory reasons*

We will assume without deciding that Robertson has made a prima facie case for race and gender discrimination, and proceed to the second step of the burden-shifting framework. In doing so, we conclude that Ampla has shown through undisputed facts that it had a legitimate, nondiscriminatory reason for its adverse employment actions.

When assessing whether an employer has produced sufficient evidence that its adverse action was legitimate, its explanation must only be " 'clear and reasonably specific.' " (*University of Southern California v. Superior Court* (1990) 222 Cal.App.3d 1028, 1036.) We do not " ' "sit as a super-personnel department that reexamines an entity's business decisions." ' " (*Farnham v. Superior Court* (1997) 60 Cal.App.4th 69, 78.) As long as the reasons for an adverse employment action are nondiscriminatory, they need not be "wise or correct." (*Guz, supra*, 24 Cal.4th at p. 358.)

Here, Ampla provides nondiscriminatory explanations for its decision to decline Robertson's raise and later terminate her employment. We initially note that the evidence suggests Flores was highly motivated to hire Robertson. He interviewed her, offered her the highest salary given to a CFO at Ampla thus far, and made an exception to Ampla's policy to pay for her moving expenses. However, multiple issues with her performance arose that establish a legitimate basis for Ampla's adverse employment actions, including Robertson's failure to comply with Ampla's attendance and leave policy; lack of office presence; failure to comply with the action plan; disclosure of confidential and inaccurate information to the board; difficulty with personal interactions; failure to improve her performance despite multiple warnings; and Ampla's increasingly dire financial condition during her tenure. With respect to Ampla's financials, Ampla proffered evidence that Ampla's finances deteriorated under Robertson's supervision; Robertson recommended cost-cutting—including layoffs—to address Ampla's finances; and in

15

response to Robertson's presentation, the board demanded action to improve Ampla's financial viability.  As a result, Ampla implemented a plan that included the termination of multiple employees, including Robertson.  Aside from Robertson's performance issues, Ampla cites to Robertson's relatively short period of employment; Ampla's history of operating without a CFO; and Flores's knowledge that other employees could successfully absorb Robertson's job tasks into their daily duties support Ampla's decision to lay off Robertson.

Nonetheless, relying on *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, Robertson cites to a technicality in an effort to raise a triable question of fact as to Ampla's legitimate explanation.  She argues that if any single fact in Ampla's separate statement is untrue or contested by admissible evidence—even if the fact is unnecessary or immaterial to the analysis—Ampla cannot win on summary judgment.  In support of this argument, Robertson cites to Ampla's undisputed material fact (UMF) No. 95, which states in part that Robertson was the most recent hire for the executive team prior to Robertson's layoff, when in fact Ampla hired Lott to the executive team *after* hiring Robertson.  Ampla concedes the error, but argues this oversight does not create a triable issue of fact as to whether Robertson's termination was discriminatory or retaliatory, or that Ampla's rationale for termination was pretextual.  We agree with Ampla.

Relying on Flores's declaration, UMF No. 95 states in full:  "Pursuant to the Corrective Action Plan approved by Ampla's Board, on November 17, 2017, Mr. Flores made the decision to eliminate [Robertson's] position as CFO at Ampla.  This decision was based solely on Ampla's financial condition as reported by [Robertson].  *Because [Robertson] was the most recent hire to the Executive Team* and [Robertson's] position as CFO was a position that had been vacant for many months prior to [Robertson's] hire, Mr. Flores determined there were experienced members in Ampla's Finance Department (including the Controller, Veronica Richter) that would be able to assume the

16

responsibilities that [Robertson] had undertaken. As such, eliminating the CFO position made the most sense." (Italics added.)

Thus, UMF No. 95 asserts that Ampla decided to lay Robertson off because of Ampla's declining financial condition, and explains that because Robertson was recently hired and Ampla previously operated without a CFO, Flores was aware that others could competently assume her job duties. The fact that Lott was technically hired after Robertson does not, by itself, refute this assertion or otherwise raise a triable issue of material fact sufficient to defeat summary adjudication.

### 3. *Robertson's evidence of gender and race discrimination*

In view of Ampla's legitimate, nondiscriminatory rationale, the presumption of discrimination disappears, and the burden shifts to Robertson to provide substantial evidence raising a triable issue of fact that Ampla's stated reasons were, in fact, pretext for discrimination, or that Ampla acted with discriminatory animus. Robertson has failed to meet her burden with respect to both her gender and race discrimination claims.

"Harassment is distinguishable from discrimination under the FEHA. '[D]iscrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace.' " (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 869, citing *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 707.) With respect to gender discrimination, the admissible evidence Robertson offers is sparse. She provides evidence that Ampla's COO, Peralta, complained to Flores about Robertson's interpersonal skills, and that Robertson told Flores that she found Peralta dismissive towards women. However, Robertson does not offer any evidence that Peralta supervised Robertson or was otherwise involved in her job. Nor does she offer evidence that Peralta had any authority over the adverse employment decisions. (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 113.)

17

The remaining admissible evidence regarding gender discrimination consists largely of Robertson's generalized *belief* that Flores treated women differently from men, but she produces no evidence to bolster her subjective perception. A summary judgment motion may not be defeated by "speculation, conjecture, imagination or guesswork." (*O'Neil v. Dake* (1985) 169 Cal.App.3d 1038, 1044.) A triable issue of fact must be supported by a factual foundation in the record, not mere conclusory assertions or possibilities. (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525.) Here, Robertson complained to Flores and Anaya that "other employees" told her that they "believed" Flores treated women differently. She also "observed Flores speaking to female employees differently compared to the way he talked to men." This evidence is vague and speculative, as Robertson does not name the employees who made those comments or the basis for their belief, nor does she specifically explain the way Flores spoke differently to other women. More fundamentally, evidence that Flores purportedly treated other women differently is irrelevant to Robertson's claim that Flores discriminated against *her*. Finally, the fact that Flores and Anaya did not formally investigate Robertson's ambiguous complaints is not, as Robertson suggests, substantial evidence that Ampla knew Flores treated Robertson differently and thus chose not to investigate. Again, this is pure speculation insufficient to meet Robertson's burden.

Regarding racial discrimination, Robertson again fails to produce substantial evidence of discriminatory animus. "Plaintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*King v. United Parcel Service, Inc., supra*, 152 Cal.App.4th at p. 433.) Robertson told Flores that she heard he "did not like Black people," and when Flores asked for details she responded, "[P]eople talk, and people talk to me, and they say things, and I know that's the way you are." She said it was her "belief that Flores did not like working with a Black woman," and that was why he treated her as he did. Again, Robertson's subjective belief that Flores did not like her because of her race is not

18

substantial evidence of discriminatory animus.  Similarly, unsupported comments from unnamed people "saying things" about how Flores "did not like Black people" is not evidence that Flores discriminated against Robertson.

Robertson further contends that Flores was motivated by discriminatory animus because she was the "only executive team member who was not permitted to work from home" and who was not permitted to go to conferences.  With respect to working from home, Robertson produces evidence that one executive team member—Valdez—was permitted to use flex time to work a flexible schedule, including some work from home.  But Ampla explains that this was due to Valdez's different job responsibilities, which required evening and weekend work, thus requiring a flexible schedule.  There is no evidence that Robertson was not allowed to work from home because of her race.  Similarly, Ampla provided evidence that Robertson was not allowed to attend conferences due to her performance issues and specific job duties.  She points to no evidence, let alone substantial evidence, that her inability to attend conferences was based on her race.  And while Robertson attests that Flores communicated with her in a manner that left her feeling "ostracized" after she accused him of disliking Black people and women, this is, again, Robertson's own inferences and subjective belief of discriminatory animus.  A supervisor's perceived tone or demeanor is insufficient to raise a triable issue of material fact regarding discriminatory animus.  (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 428.)  Certainly, it does not constitute substantial evidence showing that Flores harbored discriminatory animus that was a "substantial factor in the particular employment decision[s]." (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232, italics omitted.)

We accordingly conclude that Robertson failed to raise a triable issue of material fact that Flores's adverse job actions were motivated by discriminatory animus.

4. *Pretext*

Robertson separately argues that she has raised a question of fact as to whether Ampla's legitimate reasons were pretextual. "Pretext may be demonstrated by showing [through substantial evidence] '. . . that the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge. [Citation.]' [Citation.]" (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 224, fn. omitted.)

However, even if pretext is shown, "an inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons. The pertinent statutes do not prohibit lying, they prohibit discrimination. [Citation.] Proof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons. [Citation.] Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions." (*Guz, supra*, 24 Cal.4th at pp. 360-361; accord, *St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 514-515 [125 L.Ed.2d 407, 421] ["[N]othing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable"].)

We are aware that "[i]n an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias." (*Guz, supra*, 24 Cal.4th at p. 356.) This is not such a case, as there is simply no evidence supporting a rational inference of intentional discrimination. Indeed, we question whether Robertson has sufficient evidence to establish even a prima facie case of race or gender discrimination given the scant evidence of discrimination. Thus, even if the reasons behind Ampla's decision to terminate Robertson was untrue or

unwise, without any evidence suggesting a discriminatory motive, Robertson's discrimination claims still must fail.

Moreover, even assuming the question of pretext was dispositive here, Robertson does not provide evidence raising a triable issue of material fact that Ampla's legitimate reasons were pretextual. Robertson first contends that poor job performance could not be the true reason for her adverse employment actions because Ampla ignored all her positive contributions, including compliments she received and the fact that there were no negative findings from her department audit. She further provides her favorable assessment of her own performance in her declaration. However, whatever positive contributions Robertson made do not negate the various performance issues raised by Flores, which include the presentation of inaccurate and confidential information to the board, failure to comply with multiple directives regarding attendance and responsiveness, and failure to comply with the action plan that Flores drew up to improve those issues. An " 'employee's subjective personal judgments of his or her competence alone do not raise a genuine issue of material fact.' " (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 76 (*Morgan*).)

Robertson further argues that termination for financial reasons was pretextual because Ampla had a revenue surplus for each month after her termination, the company spent money on "lavish board retreats," and because it seemed unwise to lay off a CFO during times of financial challenge. But Robertson herself admits that by mid-September 2017, "the increased expenses were not offset by anticipated income as hoped," and that if "corrective actions were not taken and the current course stayed constant, the company would have to dip into its reserves." In her October 2017 presentation to the board, Robertson stated that Ampla only had two months of reserves to remain financially viable, and thus recommended that Ampla cut costs, including layoffs and closing clinics. And while Robertson contends that Ampla's financial condition improved after her recommendations were implemented following her departure, she can only speculate that

21

such recommendations were properly implemented and caused Ampla's financial turnaround, as she was no longer employed at that time. Moreover, the fact that Ampla's finances recovered following Robertson's termination could equally suggest that Robertson's employment contributed to Ampla's poor financial performance. In fact, Ampla's recovery could be attributed to its decision to, among other things, lay off employees, which further supports Ampla's legitimate reason for Robertson's termination. Thus, such evidence is insufficient to raise a triable question of fact as to whether Ampla's financial rationale for her termination was pretextual.

IV

*FEHA Retaliation*

Next, Robertson contends that her FEHA retaliation claim survives summary judgment because there is a question of fact as to whether she engaged in protected activity by complaining about Flores's treatment of women and African-Americans, and whether there was a causal link between her complaints and termination. We disagree.

Under the FEHA, an employer may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under" the FEHA. (§ 12940, subd. (h).) "Employees may establish a prima facie case of unlawful retaliation by showing that (1) they engaged in activities protected by the FEHA, (2) their employers subsequently took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse employment action." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 472.)

"A plaintiff can satisfy his or her initial burden under the test by producing evidence of nothing more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388.) "Such evidence, however, only satisfies the plaintiff's initial burden. 'Once an employee establishes a prima facie case,

the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation " ' "drops out of the picture," ' " and the burden shifts back to the employee to prove intentional retaliation. [Citation.]' [Citation.]" (*Ibid*.) Then, "[t]he plaintiff's burden is to prove, by competent evidence, that the employer's proffered justification is mere pretext; i.e., that the presumptively valid reason for the employer's action was in fact a coverup. [Citation.] In responding to the employer's showing of a legitimate reason for the complained-of action, the plaintiff cannot ' "simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee ' "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [. . . asserted] non-discriminatory [or nonretaliatory] reasons.' " ' " ' " (*McRae, supra*, at pp. 388-389.)

Here, even assuming without deciding that Robertson's vague, subjective, and largely unsubstantiated complaints of gender and race discrimination to Flores, Anaya, and Skelly constituted protected activity, Ampla has met its burden to show a legitimate, nonretaliatory reason for Robertson's termination, as discussed *ante*.[4] In turn, Robertson has failed to raise a triable issue of material fact showing that Ampla's stated reasons were pretextual or that the circumstances " 'as a whole support[ ] a reasoned inference that the challenged action was the product of . . . retaliatory animus.' " (*Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207, 1226.)

---

**4** In her opening brief, Robertson argues that a jury could infer a causal nexus between her complaints and her termination; she does not address any other alleged adverse actions.

As evidence of retaliatory animus, Robertson primarily points to Flores's testimony that he was " 'shocked' " when, in October 2016, Robertson accused him of disliking Black women, and that he found those comments " 'disrespectful.' " She contends that a reasonable jury could infer that Flores's feelings of shock and disrespect "were on his mind" when he decided to terminate Robertson's employment in November 2017. Such an assertion is pure speculation, particularly in view of the timing: Ampla did not terminate Robertson's employment until over a year after their conversation. Based on the admissible evidence, there is simply no basis for a reasonable fact finder to infer a causal link between Robertson's accusation and her termination. Further, even if the conversation and termination happened in close proximity, "a mere temporal relationship between an employee's protected activity and the adverse employment action, while sufficient for the plaintiff's prima facie case, cannot create a triable issue of fact if the employer offers a legitimate, nonretaliatory reason for the adverse action." (*Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 94.)

Similarly, Robertson's vague complaint to board treasurer Skelly (via text message) that Flores discriminated against Black and female employees took place a full six and a half months before her termination. And crucially, Robertson provides no evidence that her complaint to Skelly was communicated to a decision maker at Ampla. "In the absence of evidence that the individuals who [sanctioned the adverse act] were aware of [the employee's] past filing of a grievance, the causal link necessary for a claim of retaliation can not be established." (*Morgan, supra*, 88 Cal.App.4th at p. 73.) Nor does she provide evidence that Anaya or Skelly were involved in the termination decision.

As Ampla has established nonretaliatory reasons for the adverse employment actions, and Robertson has not provided substantial evidence of pretext, summary adjudication of Robertson's retaliation claim was proper.

V

*CFRA Retaliation*

Robertson next contends the trial court erred by summarily adjudicating her claim for CFRA retaliation in Ampla's favor. She asserts that a triable issue of fact exists as to whether her CFRA leave was a substantial motivating factor for her termination. Again, we are not persuaded.

To establish a claim for CFRA retaliation, Robertson has the burden of showing that (1) Ampla was an employer covered by the CFRA; (2) Robertson was an employee eligible to take leave; (3) Robertson exercised her right to take leave for a qualifying purpose; and (4) Robertson suffered an adverse employment action because of her exercise of this right. (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 261; § 12945.2, subd. (*l*)(1).) CFRA discrimination or retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas, supra*, 411 U.S. at pages 802 through 805. (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 885.)

While again not wholly convinced that Robertson even establishes a prima facie case, we nonetheless begin with the second step of the analysis and reiterate our conclusion that Ampla provided sufficient and undisputed evidence of nonretaliatory reasons for her termination. In response, Robertson provides evidence that she was terminated during her period of intermittent CFRA leave. However, Robertson provides no evidence of a causal link between her CFRA leave and her termination. "Once an employee has submitted a request for leave under the CFRA, the employer is charged with knowledge that the employee's absences pursuant to the leave request are protected and may not thereafter take adverse employment action against the employee based upon—that is, 'because of'—those protected absences." (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1260.) The causal link may be established by an inference derived from circumstantial evidence, such as the closeness in time between the

protected activity and the alleged retaliatory action. This, however, is not dispositive. (*Morgan, supra*, 88 Cal.App.4th at p. 69.) In showing a causal connection between the protected activity and the adverse employment action, a mere sequence of events is not enough. (*Chen v. County of Orange* (2002) 96 Cal.App.4th 926, 931.)

Here, Robertson's only evidence of causation is the timing of her termination in proximity to her CFRA leave. This, without any other evidence, is insufficient to raise a triable issue of material fact. The undisputed evidence shows that Robertson asked for up to two weeks of leave for her daughter's pregnancy, and was granted the requested intermittent leave from September 26, 2017, to November 26, 2017. Robertson took one week of CFRA leave and returned by mid-October. Following her return from leave, Robertson never asked to return to Chicago to assist her daughter in conjunction with family leave. Nor did Robertson receive word from her daughter, before her termination, that her daughter needed Robertson to return to Chicago.

Thus, a reasonable fact finder could not conclude that the mere temporal relationship between Robertson's leave and termination is evidence of retaliation, given the following circumstances: Robertson requested and was granted her leave without incident, Robertson took one week of leave and did not have any pending requests for further leave and, in the time between Robertson's leave and her termination, Robertson presented Ampla's dire financial situation to the board and recommended cost-cutting measures and layoffs, resulting in the corrective action plan that led to her termination. Robertson thus fails to raise a triable issue of material fact as to whether Flores terminated her employment because of her CFRA leave. (See *Guz, supra*, 24 Cal.4th at p. 360 [plaintiff must create triable issue that decision was "actually made" for prohibited reason].)

Accordingly, the trial court properly granted summary adjudication in Ampla's favor on Robertson's CFRA retaliation claim.

## VI

### *Failure to Prevent Discrimination/Retaliation*

As we conclude that Robertson's claims for retaliation and discrimination fail as a matter of law, her derivative claim for failure to prevent discrimination and retaliation (§ 12940, subd. (k)) also must fail. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289 ["Employers should not be held liable to employees for failure to take necessary steps to prevent [discrimination or retaliation], except where the actions took place and were not prevented"].) Ampla accordingly is entitled to judgment on Robertson's sixth cause of action for failure to prevent discrimination and retaliation as a matter of law.

## VII

### *Whistleblower Retaliation—Labor Code Section 1102.5*

Robertson argues that Ampla is not entitled to judgment on her whistleblower claim under Labor Code section 1102.5, subdivisions (b) and (c). Again, we disagree.

Labor Code section 1102.5, subdivision (b) grants whistleblower protections to employees who share information with authorities that the employee "has reasonable cause to believe . . . discloses a violation of state or federal statute" or of "a local, state, or federal rule or regulation." Subdivision (c) protects employees who "refus[e] to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation," from retaliation. (Lab. Code, § 1102.5, subd. (c).)

Labor Code section 1102.6 "describes the applicable substantive standards and burdens of proof for both parties in a section 1102.5 retaliation case: First, it must be 'demonstrated by a preponderance of the evidence' that the employee's protected whistleblowing was a 'contributing factor' to an adverse employment action. ([Lab. Code,] § 1102.6.) Then, once the employee has made that necessary threshold showing, the employer bears 'the burden of proof to demonstrate by clear and convincing

27

evidence' that the alleged adverse employment action would have occurred 'for legitimate, independent reasons' even if the employee had not engaged in protected whistleblowing activities." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 712.)

Robertson's whistleblower claim is based on the allegation that she made "numerous protected complaints" to people authorized to "investigate, discover, or correct the violation and/or noncompliance with state or federal laws requiring accurate financial reporting." She specifically alleges that she "refused to comply with Flores's order that she provide false testimony to [Ampla's board] concerning [Ampla's] financial health" because she believed doing so would violate a state or federal rule or regulation. She alleges that Ampla violated Labor Code section 1102.5, subdivisions (b) and (c) by firing her in retaliation for her complaints about Flores's unlawful directive to falsely report financial information to the board and/or for her refusal to comply with that unlawful directive.

On appeal, and in her opposition to the motion for summary judgment below, Robertson abandons her allegation regarding Flores's purported order that she provide false financial information to the board. Instead, Robertson relies on two *other* complaints she made during her employment, arguing that those complaints provide sufficient evidence of a whistleblower claim to defeat summary judgment. First, Robertson contends that her September 17, 2017 text message to Anaya, in which she accused Flores of withholding her salary in violation of the Labor Code (which she admits never actually occurred), constituted a protected complaint. Additionally, she contends that she told her coworker, Lott, that Ampla had entered into a contract with a third party vendor of prescription drugs that potentially violated section 340B of the

28

Public Health Services Act (42 U.S.C. § 256b) (340B program).[5]  She asserts that Lott then told Flores that he was concerned about Ampla's relationship with the prescription vendor, but Flores did not take the complaint seriously.  She argues that she was laid off in retaliation for both complaints.

In opposition, Ampla first argues that because her complaint only specifically mentions Flores's directive to report false financial information to the board as the basis of her claim, she cannot now rely on the salary incident or the Lott incident to defeat summary adjudication.  We agree.  The pleadings play a key role in a summary judgment motion and " ' "set the boundaries of the issues to be resolved at summary judgment." ' " (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 289.)  "A party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings," and "[e]vidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings."  (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3.)

Here, Robertson's whistleblower cause of action in the complaint only specifically mentions Flores's directive to the board.  As noted, Robertson's briefs do not address this theory, perhaps because the undisputed evidence is clear:  Flores told Robertson and others to always provide accurate financial information to the board, Flores reprimanded Robertson when she failed to provide the board with accurate information regarding a specific contract, and although Robertson interpreted Flores's suggestion to read "How to Lie with Statistics" as a request to falsify information, she never actually read the book and thus does not know its contents.  Robertson's only evidence in response to these facts is her declaration stating that Flores suggested she "be 'creative' " with her financial

---

[5]  Robertson's verified complaint states that "[u]nder the 340B Program, drug manufacturers participating in Medicaid, agree to provide outpatient drugs to covered entities at significantly reduced prices."

29

report to the board. However, Flores's generalized suggestion is consistent with Flores's efforts to assist Robertson in presenting the correct numbers to the board in a more positive and consumable manner. It does not constitute substantial evidence that Flores asked Robertson to violate any statute, rule, or regulation, or that Robertson had reasonable cause to believe that she disclosed any such violation.

As noted, Robertson's whistleblower cause of action also generally references "numerous protected complaints" regarding Ampla's "noncompliance with state or federal laws *requiring accurate financial reporting*." Accordingly, Robertson's complaint to Anaya that her salary was withheld, which bears no relationship to financial reporting laws, is an unpleaded theory that Robertson may not now assert to oppose summary adjudication. Additionally, although Robertson's concerns about the 340B program, relayed to Flores through Lott, arguably deal with accurate financial reporting, Robertson's verified complaint does not allege that Lott told Flores about those concerns. Rather, the complaint's statement of facts alleges only that she disclosed this issue to Lott. It does not allege that Lott informed Flores, or any other decision maker who could potentially retaliate in response to the disclosure, of his conversation with Robertson about the 340B program. Thus, Robertson may not now raise this new theory to meet her burden. (See *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444 [plaintiff cannot defeat summary judgment on unpleaded theory of liability in negligence claim].)

Accordingly, there is no triable issue of material fact to Robertson's whistleblower claim, and Ampla is entitled to judgment as a matter of law.[6]

---

[6]     We reject Robertson's argument, made for the first time on appeal, that her discrimination and retaliation claims survive summary judgment through a mixed-motive analysis. "It is axiomatic that arguments not raised in the trial court are forfeited on appeal." (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209

## VIII

*Wrongful Termination in Violation of Public Policy*

Robertson argues that her cause of action for wrongful termination in violation of public policy must survive summary adjudication because it is a predicate for her other claims, which she argues also survive. As we conclude her other causes of action fail, so too must her derivative claim for wrongful termination.

To prevail on a claim for wrongful termination in violation of public policy, a plaintiff must show that (1) the plaintiff was employed by the defendant; (2) the defendant discharged the plaintiff; (3) the plaintiff's activity was protected by public policy and a substantial motivating reason for the plaintiff's discharge; and (4) the discharge harmed the plaintiff. (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641.) Where a plaintiff alleges wrongful retaliation or termination in violation of public policy, California courts apply the burden-shifting framework of *McDonnell Douglas, supra*, 411 U.S. 792. (*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1108-1109.)

As discussed, we have applied the *McDonnell Douglas* burden-shifting analysis to Robertson's claims and find that they cannot survive summary adjudication. Consequently, Robertson's wrongful termination claim also must fail as a matter of law.

## IX

*Punitive Damages*

Having found no triable issue of material fact as to any of Robertson's causes of action, Robertson's claim for punitive damages is moot.

---

Cal.App.4th 1028, 1038.) Robertson has forfeited her mixed-motives argument, and we decline to address it.

## DISPOSITION

The trial court's grant of summary judgment is affirmed.  Ampla is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


                                              _____KRAUSE_____ , J.


We concur:


_____HULL_____ , Acting P. J.


_____DUARTE_____ , J.